## D. J. JOHNSON v. THE STATE.

### No. 3336.   Decided December 13, 1905.

**1.—Theft of Hog—Recent Possession—Explanation—Charge of Court.**

On trial for theft of a hog, where defendant testified that he was simply assisting another person in driving the hogs, without any interest in them, believing that they were this person's property, and the State did not disprove these statements, the court should have submitted the defendant's explanation and instructed the jury to acquit him if it was true.

**2.—Same—Charge of Court—Ownership.**

On trial for theft of a hog, where the evidence showed that defendant never claimed any interest in the hogs in question when found in his pen, and that they were marked in a mark claimed by the person whom he was assisting in driving them; that there was a sharp question as to whether the hogs belonged to the alleged owner or the person defendant assisted in driving them, it was error to charge the jury that if defendant claimed the hogs by mistake to acquit him.

Appeal from the District Court of Trinity. Tried below before Hon. Gordon Boone.

Appeal from a conviction of theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. P. Stevenson, Jno. I. Moore* and *G. C. Clegg,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a hog theft case. The evidence is very sharply contested, as to whether the hogs belonged to J. B. Stepp, or the alleged owner, V. M. Jordan. Stepp was the brother-in-law of appellant. He and appellant went out into what the witnesses call "the bottom." Appellant found one of his hogs, tried to drive it home, but did not succeed. Stepp found a sow and some shoats, which he claimed; and appellant assisted him in driving

them to appellant's house. It was too late in the day, they claimed, to reach Stepp's residence. That evening, Jordan and some others ascertaining that some hogs had been driven out of the "bottom," followed the trail. Night coming on they stopped. On the next morning en route to the place where they ceased their trail the night before, they met Stepp and Johnson. A conversation occurred in regard to the hogs, between Stepp and Jordan, and the parties present, in which appellant seems to have taken very little interest. During this conversation, appellant disclaimed any interest in or connection with the hogs other than assisting his brother-in-law Stepp in driving them. His explanation, which seems to have been unquestioned as to the fact that he made it, was that he had no interest and claimed no interest in the hogs. He also testified to this on the stand. Exception is reserved because of the failure of the court to submit his explanation and statements in regard to his connection with the hogs, to the jury. The exception is well taken. The jury should have been told that, if he was simply assisting Stepp in driving the hogs, without any interest in them, believing they were Stepp's, he should be acquitted, and the State should disprove these statements. The court submitted the case upon the theory that they were principals in the theft, acting together. This being true, under the circumstances of defendant's testimony and statements, his theory ought to have been submitted. The only charge in this regard, as we understand this record, was that the hogs were the property of Jordan and not of Stepp, and that appellant knowing that fact assisted Stepp in stealing them. As before stated, the evidence is very sharply divided, and appellant introduced several witnesses, who testified pointedly, that the sow (mother of the five shoats) was the property of Stepp, and the witness testify that when the matter was brought to his attention, appellant stated they were not his, and had no connection with them, except as a friendly act in assisting his brother-in-law in driving them.

The court also charged the jury that the hogs, if any were taken, were the property of Jordan, but if defendant openly took the hogs, if he took them, under a mistake, honestly believing they were his, or that they were the property of Stepp, they should acquit; and further that, if the defendant honestly believed they were his or the property of Stepp, they should acquit. The following portion of the court's charge in regard to the reasonable doubt as to the ownership, authorized the jury to acquit, if they had a reasonable doubt on the question as to whether the hogs were the property of Jordan on the one hand, or of the defendant or Stepp on the other. Exception was reserved to this portion of the charge, which we think is well taken. Nowhere in the evidence did appellant ever claim any interest in the hogs. When found in the pen at his house, they were in Stepp's mark, and not appellant's. He then stated, they were not his, that he had no interest in them, and so testified. The charge to the jury should have been confined to the facts. The jury may have been misled upon the theory

of the court, that defendant claimed the hogs. This may have conveyed to the jury the idea that the court believed the defendant's testimony and the statements made to these parties in regard to his not having any interest in the hogs, or claim on them, was dishonest and untruthful. If he was guilty at all under this record, it was by reason of the fact that he and Stepp were jointly stealing the hogs, or that he assisted Stepp in stealing them, knowing that Stepp was committing the theft. All this he denied and his theory should have been affirmatively and distinctly charged.

For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*